## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH BOND, individually and on behalf of all others similarly situated, | * * * | |
| Plaintiff/Counter Defendant, | * * | |
| v. | * * | 1:24-CV-01440-ELR |
| DISPATCH ANGELS LLC d/b/a Trucking Angel LLC, | * * * | |
| Defendant, | * * | |
| BETHANY CALLAHAN a/k/a Bethany Moore, | * * * | |
| Defendant/Counter Claimant. | * * * | |

_____

## ORDER

_____

Presently before the Court is Defendant/Counter Claimant Bethany Callahan's ("Defendant Callahan") Motion to Dismiss the Complaint [Doc. 18] and Plaintiff/Counter Defendant Joseph Bond's ("Plaintiff") Motion to Dismiss Defendant Callahan's Counterclaim. [Doc. 20]. The Court sets forth its reasoning and conclusions below.

## I.    Background[1]

Plaintiff, a resident of Georgia, brings this suit pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") against Defendants Callahan and Dispatch Angels LLC d/b/a Trucking Angel LLC ("Defendant Trucking Angel"). See Am. Compl. ¶ 7 [Doc. 12]. Defendant Callahan is the owner and former registered agent of Defendant Trucking Angel, an LLC that has been administratively dissolved with the Indiana Secretary of State. Id. ¶¶ 7–9. Defendant Callahan is also a licensed insurance agent in the State of Indiana who sells life insurance through various insurance companies, including through nonparty Ethos Life. Id. ¶ 30. Before its dissolution, Defendant Trucking Angel offered various services for truckers, including insurance through Ethos Life. Id. ¶ 17.

To generate business, Defendant Trucking Angel sent telemarketing text messages to consumers who had no previous relationship with Defendant Trucking Angel to attempt to sell various services, including Ethos Life insurance. Id. ¶ 18. Defendant Callahan, as the owner of Defendant Trucking Angel, personally paid for and directed these text message marketing campaigns. Id. ¶¶ 34–36. On February 20, 2024, and March 5, 2024, Defendants sent two telemarketing text messages (the

---

[1] For purposes of Defendant Callahan's Motion to Dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Defendant Callahan's Counterclaim is devoid of factual allegations, see Counterclaim; thus, the background provided herein is drawn only from Plaintiff's Complaint.

"Text Messages") to Plaintiff's telephone number, (XXX)-509-XXXX (the "Number"). Id. ¶¶ 25–27. The February Text Message states:

> I try to get to know the new carriers in my area. I have been in trucking 23 years. Let me know if there's any way I can help you. We all have to stick together!!
> Thank you,
> Marti Watson Smith
> www.truckingangel.com

Id. ¶ 26. The March Text Message states:

> I have been in trucking 23 years. I would love to help you get up and running. Let me know if there's anything I can help you with.
> Thank you,
> Marti Watson Smith
> www.truckingangel.com

Id.

The website link in both messages directs to Defendant Trucking Angel's website (the "Website"). Id. ¶ 28. The Website offers various services, including truck licensing, fuel cards, and truck financing. Id. ¶ 31. It also contains a hyperlink to "Instant Decision Life Insurance," which directs to an Ethos Life insurance application. Id. ¶¶ 28–29. Plaintiff alleges that Defendant Callahan was the only employee of Defendant Trucking Angel who provided Defendant Trucking Angel's insurance services because she was the only employee who held an insurance license. Id. ¶ 34. Plaintiff also alleges that Defendant Callahan attempted to sell Plaintiff insurance by sending the Text Messages. Id. ¶ 35.

However, Plaintiff's Number has been on the National Do Not Call Registry since April 3, 2020. Id. ¶ 20. Plaintiff's Number is a non-commercial number that he uses for residential purposes, including for his own personal and household needs.[2] Id. ¶¶ 21–22. Plaintiff never consented to receive the Text Messages. Id. ¶ 40. Thus, Plaintiff filed this putative class action on April 4, 2024, claiming that Defendants violated his privacy and the TCPA when they sent him the unwanted Text Messages. Id. ¶¶ 39, 55.

Thereafter, Defendant Callahan, proceeding *pro se*, moved to dismiss the Complaint, arguing that the Court lacks personal jurisdiction over her because she has no connection to Georgia.[3] [Doc. 18]. She also filed a Counterclaim, which Plaintiff has moved to dismiss. See Counterclaim [Doc. 19]; [Doc. 20]. The Court begins with Defendant Callahan's motion.

## II.    Defendant Callahan's Motion to Dismiss

### A.    Legal Standard

When faced with a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff "bears the initial burden of

---

[2] Defendant Callahan disputes this fact, but the Court accepts Plaintiff's allegations as true for the purposes of Defendant Callahan's motion to dismiss. Hill, 321 F.3d at 1335.

[3] Defendant Callahan argues other grounds for dismissal as well; however, because the Court finds that it lacks personal jurisdiction over Defendant Callahan, it does not discuss her merits-based arguments. See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214, n.6 (11th Cir. 1999) (A "court without personal jurisdiction is powerless to take further action.").

4

alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); see also United States ex rel. Bibby v. Mortg. Invs. Corp., 987 F.3d 1340, 1356 (11th Cir. 2021) ("To establish personal jurisdiction over a nonresident defendant, the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." (internal citation omitted)). In evaluating a plaintiff's prima facie case of personal jurisdiction, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).

### B.    Discussion

Defendant Callahan argues that this Court lacks personal jurisdiction over her. [Doc. 18]. The Court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." See Diamond Crystal, 593 F.3d at 1257–58 (internal quotation marks omitted) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). The Court must take care not to conflate these inquiries because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process. See id. at 1259. Instead, the Georgia

long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." See id.

"When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Id. at 1258 (quoting Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir.1998)). "Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court." See Ekpo v. Playa Mgmt. USA, LLC, Civil Action No. 1:21-CV-02089-TWT, 2022 WL 2048665, at *2 (N.D. Ga. June 7, 2022).

Plaintiff contends that the Court may exercise personal jurisdiction over Defendant Callahan under subsection one or section two of the Georgia long-arm statute, which provides, in relevant part, that a court may exercise personal jurisdiction over a nonresident defendant who, whether "through an agent" or directly:

(1)    Transacts any business within this state;

(2)    Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act[.]

See O.C.G.A. § 9-10-91(1)–(2).

6

However, "[f]or purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email." LABMD, Inc. v. Tiversa, Inc., 509 F. App'x 842, 844–45 (11th Cir. 2013) (citing Anderson v. Deas, 632 S.E.2d 682, 683 (Ga. Ct. App. 2006)). Thus, Plaintiff cannot rely on subsection two—the "commits a tortious act within this state"—prong of the statute. Id.; accord L. Offs. of Shimshon Wexler, P.C. v. AICOM Sols. LLC, No. 1:17-CV-1084-MHC, 2017 WL 5047903, at *3 (N.D. Ga. Oct. 30, 2017) ("Accordingly, because the sole basis for the exercise of jurisdiction in this case is [p]laintiff's receipt of a fax sent from out of state, the [d]efendants are not subject to personal jurisdiction under subsection [two] of Georgia's long-arm statute."). Therefore, Plaintiff must proceed under subsection one of the Georgia long-arm statute—the "transacts any business within the state"—prong. See O.C.G.A. § 9-10-91(1).

"Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia.]'" Diamond Crystal, 593 F.3d at 1264 (quoting Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)). "That said, a defendant need not physically enter the state. As a result, a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of

Georgia, must be considered." Id. (citing Innovative Clinical, 620 S.E.2d at 355–56). "While even a minimal number of communications may provide a basis to exercise personal jurisdiction under Georgia's long-arm statute, . . . 'Georgia courts can only exercise personal jurisdiction under the transacting business provision if the nonresident's conduct was either directed at or occurred in Georgia.'" Risper v. Mountain Run Sols., LLC, No. 3:20-cv-00209-TCB-RGV, 2021 WL 7708393, at *5 (N.D. Ga. Nov. 24, 2021), R&R adopted, 2021 WL 7708538 (N.D. Ga. Dec. 10, 2021). Additionally, Courts have looked at factors such as whether

> the defendant has offices, manufacturing plants or distribution facilities in Georgia; has ever registered to do business here; has employees, distributors or sales representatives residing or working in Georgia; pays taxes here; targets Georgia through print, television, radio or Internet advertising; and directly sells its products in Georgia or to distributors located in Georgia.

LifeBrite Lab'ys, LLC v. Blue Cross & Blue Shield of Fla., Inc., No. 1:23-CV-03748-JPB, 2024 WL 3030657, at *4 (N.D. Ga. June 17, 2024) (emphasis added) (citing Kason Indus., Inc. v. Dent Design Hardware, Ltd., 952 F. Supp. 2d 1334, 1345 (N.D. Ga. 2013)).

If Georgia's long-arm statute authorizes personal jurisdiction, the Court then must determine whether the Due Process Clause of the United States Constitution permits the same. The Supreme Court has recognized two types of personal jurisdiction: general and specific. SkyHop Techs., Inc. v. Narra, 58 F.4th 1211, 1228 (11th Cir. 2023). General jurisdiction applies when a defendant is "essentially at

8

home in the forum State," while specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (cleaned up). Plaintiff "does not contend that this [C]ourt lacks general jurisdiction" over Defendant Callahan. [Doc. 21 at 5]. Therefore, specific jurisdiction is the type of personal jurisdiction at issue in this case. Courts apply a three-part test to determine whether specific jurisdiction exists:

(1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum;

(2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and

(3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013). The plaintiff bears the burden of establishing the first two prongs. Id. If the plaintiff meets this burden, the defendant must then "make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (quoting Diamond Crystal, 593 F.3d at 1267).

Defendant Callahan argues that she is not subject to personal jurisdiction in Georgia because her alleged contact with Plaintiff in Georgia (the Text Messages) was isolated and incidental, and she has not purposefully availed herself to the

privilege of conducting activities within Georgia. [Docs. 18 at 5; 23 at 5]. Plaintiff, on the other hand, argues that Defendant Callahan both "transact[ed]" business in Georgia, as contemplated by the long-arm statute, and has sufficient minimum contacts with Georgia so as to satisfy the requirements of specific jurisdiction. [Doc. 18].

Beginning with the long-arm statute, Plaintiff contends that the following evidence shows that Defendant Callahan "transact[ed]" business in Georgia. First, Plaintiff proffers an unauthenticated "Individual Consumer Inquiry for the State of Georgia" showing that Defendant Callahan held a "non-resident agent" license to sell insurance in Georgia from February 28, 2022, through January 31, 2024, for three insurance companies (the "License"). [Doc. 21-1]. Thus, Plaintiff asserts that Defendant Callahan "stood ready" do business in Georgia. [Docs. 21 at 11]. Second, Plaintiff argues that the Text Messages themselves show that Defendant Callahan knowingly attempted to sell insurance to Plaintiff in Georgia. [Id. at 6]. Specifically, Plaintiff argues that because the Text Messages show that someone named Marti Watson Smith (presumably a Defendant Trucking Angel employee) wanted to "get to know the new carriers *in [her] area*," Defendant Callahan knowingly "target[ed] truckers in Georgia" to sell insurance in the Georgia "area." [Id. at 5–6] (emphasis added).

Upon review, the Court is unpersuaded that Plaintiff has met its burden of alleging that Defendant Callahan transacted business in Georgia. First, contrary to Plaintiff's attenuated argument, the Text Messages alone do not establish that Defendant Callahan knowingly directed any business at Georgia. Diamond Crystal, 593 F.3d at 1264 (noting that the conduct must be "directed at" Georgia); see also Steger v. Maxwell & Morgan, P.C., No. 1:15-cv-03396-LMM-JKF, 2016 WL 11570387, at *2 (N.D. Ga. Dec. 22, 2016) (holding that because an email was not "purposely" sent to plaintiffs in Georgia, the defendant's act of sending the email did not fall within Georgia's long-arm statute). The Complaint is devoid of allegations about the identity or location of Defendant Trucking Angel's (presumed) employee Marti Watson Smith when she sent the Text Messages seeking to connect with carriers in her "area." See generally Am. Compl. As a result, nothing in the record—other than Plaintiff's physical location when he happened to receive the Text Messages—indicates that the "area" Ms. Smith was trying to reach was in Georgia.[4] Consequently, Plaintiff has not alleged sufficient facts to support a reasonable inference that the Text Messages were intentionally directed at Georgia. Further, even if Defendant Callahan sent the text messages knowing Plaintiff was in

---

[4] Moreover, Defendant Callahan's expired License cuts against Plaintiff's argument that the Text Messages were directed at Georgia. [See Doc. 21-1]. Defendant Callahan was only licensed to sell insurance in Georgia with three companies—none of which include Ethos Life (the insurance company through which Defendant Trucking Angel allegedly offered insurance). [Id.] Additionally, the Text Messages were sent after Plaintiff's Georgia License expired. [Id.]

Georgia, "a single knowing contact with Georgia is not enough[.]" <u>See</u> <u>Bond v. Blue</u> <u>Water Capital LLC</u>, No. 1:24-cv-01612-VMC, Doc. 20 at 11 (N.D. Ga. March 21, 2025).

Second, the mere evidence of Defendant Callahan's expired License, without more, is also insufficient to show that Defendant Callahan "transact[ed]" business in Georgia. <u>See</u> <u>LifeBrite Lab'ys</u>, 2024 WL 3030657, at *4 (noting that whether a nonresident "has ever registered to do business" in Georgia is only one of various factors courts consider when determining whether the nonresident has transacted any business in Georgia). For example, one could be admitted to practice law in another state but ultimately never practice there. And here, other than the Text Messages, the Complaint is devoid of allegations that Defendant Callahan ever took any actions to advertise business, consummate a transaction, or otherwise sell insurance specifically in Georgia. <u>See generally</u> Am. Compl.

Accordingly, the Court finds that Plaintiff fails to allege sufficient facts to show that Defendant Callahan transacted business in Georgia. <u>Mortg. Invs.</u>, 987 F.3d at 1356. Because Plaintiff has not established that Georgia's long-arm statute reaches Defendant Callahan's conduct, the Court need not consider whether exercising personal jurisdiction over Defendant Callahan would comport with due process. <u>Diamond Crystal</u>, 593 F.3d at 1263 ("[I]n assessing the propriety of the exercise of personal jurisdiction, courts must . . . ensure that both, separate prongs of the

jurisdictional inquiry are satisfied."). Accordingly, Defendant Callahan's motion to dismiss is due to be granted. [Doc. 18].

Plaintiff seeks jurisdictional discovery as an alternative in his response brief. [Doc. 21 at 11–12]. However, Plaintiff's request is procedurally inappropriate because it should have been made by motion. Amin v. O'Brien, No. CV 5:24-022, 2025 WL 90116, at *5 (S.D. Ga. Jan. 14, 2025). Additionally, courts "disfavor requests for jurisdictional discovery that are overly generalized, perfunctory, or dilatory." Carter v. United States, No. 1:19-CV-02787-ELR, 2021 WL 6621075, *3 (N.D. Ga. Dec. 13, 2021) (collecting cases). Here, Plaintiff "has not made a showing that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction." Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc., 915 F. Supp. 2d 1365, 1379 (N.D. Ga. 2013). Instead, Plaintiff merely argues, in a conclusory fashion, that if the Court does not find that Plaintiff has made out a prima facie case supporting the exercise of specific personal jurisdiction, "the issue should be subject to further discovery." [Doc. 21 at 12]. Therefore, the Court denies Plaintiff's request for jurisdictional discovery embedded in his response to Defendant Callahan's motion to dismiss. See Atlantis Hydroponics, 915 F. Supp. 2d at 1379 (explaining that jurisdictional discovery is not a vehicle for a "'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." Id. (citation omitted)); Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir.

1999) (affirming the district court's denial of jurisdictional discovery when plaintiffs made no efforts to obtain such discovery during the 8 months between the filing of their complaint and the time it was dismissed, plaintiffs' only allusion to discovery was on the first page of their response to the motion to dismiss, and plaintiffs "failed to specify what they thought could or should be discovered").

## III.    Plaintiff's Motion to Dismiss Defendant Callahan's Counterclaim

Defendant Callahan, proceeding *pro se*, filed a purported Counterclaim after filing her Motion to Dismiss. See Counterclaim. However, the Counterclaim is structured as a motion and devoid of factual allegations. Id. For instance, similar to Defendant Callahan's motion to dismiss, the Counterclaim argues that the Court lacks personal jurisdiction over Defendant Callahan. Id. at 2. It also argues that Plaintiff's claims are frivolous and vexatious. Id. at 3. In the prayer for relief, Defendant Callahan asks the Court to impose sanctions on Plaintiff and dismiss Plaintiff's complaint. Id.

Plaintiff moves to dismiss Defendant Callahan's Counterclaim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) because it alleges no injury-in-fact and pleads no cause of action.[5] [Doc. 20 at 1–2]. The Court agrees. At best, the Counterclaim asserts defenses to the Complaint and a request for sanctions.

---

[5] Defendant Callahan did not file any opposition in response to Plaintiff's motion.

However, "there is no standalone cause of action for 'sanctions,' whether under 28 U.S.C. § 1927, Rule 11, or the Court's inherent power." <u>Prospect Funding Holdings, LLC v. Pilgrim</u>, No. 1:19-CV-00844, 2019 WL 12528619, at *4 (N.D. Ga. Dec. 12, 2019). Thus, the Court grants Plaintiff's motion to dismiss. [Doc. 20].

## IV. Plaintiff's Failure to Prosecute His Claims Against Defendant Trucking Angel

As a final matter, the Court addresses Plaintiff's failure to prosecute its claims against Defendant Trucking Angel. On November 8, 2024, the Court entered an order observing that the docket did not reflect that service had been perfected upon Defendant Trucking Angel. [Doc. 25]. Thus, the Court directed Plaintiff to show cause as to why his claims against Defendant Trucking Angel should not be dismissed for want of prosecution. [<u>Id.</u>]

In response, Plaintiff filed a Motion for Clerk's Entry of Default against Defendant Trucking Angel. [Doc. 26]. Plaintiff argued that Defendant Trucking Angel was served on August 7, 2024, citing to docket entry 16 in this case. [<u>Id.</u> at 2]. The Court denied Defendant's motion, noting that docket entry 16 did not reflect that Plaintiff had perfected service upon Defendant Trucking Angel. [<u>See</u> Doc. 16] (reflecting proof of service only as to Defendant Bethany Callahan a/k/a Bethany Moore). Accordingly, the Court again ordered Plaintiff to show cause why its claims against Defendant Trucking Angel should not be dismissed for want of prosecution.

Plaintiff then filed a response to the Court's show cause order. [Doc. 27]. In his response, Plaintiff argues that because Defendant Callahan was properly served and because she is the registered agent for Defendant Trucking Angel, Defendant Trucking Angel was properly served as well. [Id. at 1–2]. In other words, Plaintiff contends that the proof of service as to Defendant Callahan filed at docket entry 16 is sufficient to constitute proof of service as to both Defendants Callahan and Trucking Angel.

The Court disagrees. Federal Rule of Civil Procedure 4 governs service of process, the means by which federal courts perfect jurisdiction. Rule 4(c)(1) provides that the "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Rule 4(a) dictates the required contents of a summons. As relevant here, Rule 4(a)(1) states that a summons must be signed by the clerk and bear the court's seal. Additionally, it states that the summons must "be directed to the defendant." Additionally, Rule 4(b) requires that a summons that is addressed to multiple defendants "must be issued for *each* defendant to be served" (emphasis added). These requirements are not "ambiguous" nor optional. See Sowell v. Sw. Airlines Co., No. 1:23-CV-00634-SDG, 2024 WL 1258202, at *2 (N.D. Ga. Mar. 22, 2024).

Here, the only purported "proof of service" as to Defendant Trucking Angel is a summons with several defects. Namely, the summons is directed to Defendant

16

Callahan, not Defendant Trucking Angel. [Doc. 16]. Additionally, the summons is not signed by the Clerk of Court, and it does not bear the Court's seal. [Id.] In sum, Plaintiff's position that his proof of service as to Defendant Callahan is sufficient to constitute proof of service as to Defendant Trucking Angel directly contradicts the requirements of Rule 4(a) and Rule 4(b). Therefore, the Court finds that Defendant has twice now failed to show cause as to why his claims against Defendant Trucking Angel should not be dismissed for want of prosecution. Additionally, the Court finds no good cause and no reason to exercise its discretion to permit late service in this case. Accordingly, the Court dismisses Plaintiff's claims against Defendant Trucking Angel. See Moskovits v. Aldridge Pite, LLP, 677 F. App'x 510, 515 n.6 (11th Cir. 2017) (Federal Rule of Civil Procedure 41(b) "permits dismissal for failure to prosecute or to comply with the Federal Rules of Civil Procedure or any order of court") (internal citation omitted); see also LR 16.5, NDGa. ("[f]ailure to comply with the court's pretrial instructions may result in the imposition of sanctions, including dismissal of the case").

## V.    Conclusion

For the foregoing reasons, the Court **DISMISSES** Plaintiff's claims against Defendant Trucking Angel. [Doc. 12]. Additionally, the Court **GRANTS** Defendant Callahan's Motion to Dismiss, [Doc. 18], and therefore **DISMISSES** Plaintiff's claims against Defendant Callahan. [Doc. 12]. Finally, the Court **GRANTS** Plaintiff's

Motion to Dismiss Defendant Callahan's Counterclaim, [Doc. 20], and therefore **DISMISSES** the Counterclaim. [Doc. 19].

Having dismissed all pending claims in this case, the Court **DIRECTS** the Clerk of Court to **TERMINATE** the case.

**SO ORDERED**, this 31st day of March, 2025.

Eleanor L. Ross
United States District Judge
Northern District of Georgia